

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/AL/GP                                    *271 Cadman Plaza East*
F.#2010R00153                                *Brooklyn, New York 11201*

                                             June 4, 2012

By Hand Delivery and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:   United States v. Michael Castellano
                      Criminal Docket No. 11-30 (KAM)

Dear Judge Matsumoto:

        The government respectfully submits this letter in
response to the sentencing memorandum submitted by the defendant
Michael Castellano.  (Sent. Mem., filed May 24, 2012, ECF Docket
Entry No. 800 ("Def't Sent. Mem.")).  For the reasons set forth
below, the government opposes the defendant's request for a non-
incarceratory sentence, and respectfully asks the Court to
sentence the defendant within the advisory Guidelines range
determined by the Court.

I.   Background

        The defendant Michael Castellano is a long-time
associate of the Colombo organized crime family of La Cosa Nostra
(the "Colombo family" and "LCN," respectively).  The indictment
in the above-referenced case charged Castellano with agreeing to
participate, participating, in two schemes to defraud in
connection with the Colombo family, a violent criminal
organization.

        The co-conspirators in the first scheme, which took
place in the 1990s, included, among others, Castellano, co-
defendants John Rossano, Frank Senatore and Anthony Calabro, and
another co-conspirator ("CC"), who at the time had a reputation
as a respected associate in the Colombo family.  In that scheme,
the co-conspirators placed advertisements in newspapers, falsely
promising to loan money to individuals with poor credit histories
in exchange for an up-front payment, and then faxed confirmation

letters to the individuals who responded to the advertisements.
The co-conspirators then arranged for the customers to transmit
by Western Union the up-front payments, which the co-
conspiractors then collected.  The co-conspirators never provided
the customers with the money they promised to loan them.
Castellano and co-defendant Frank Senatore were charged in 2001
and subsequently convicted of their participation in the scheme.

The second scheme was the scheme to defraud MoneyGram
and involved, among others, Castellano, Rossano and CC, who by
that time had been inducted into the Colombo family and held the
position of captain.  In furtherance of that scheme, Castellano
acquired the requisite information to impersonate an employee at
a MoneyGram outlet by entering a MoneyGram outlet and using
social engineering to obtain the particular outlet's
identification number, which allowed employees at the MoneyGram
outlet to identify themselves to a centralized MoneyGram
location.  Castellano then called the centralized MoneyGram
location using a prepaid cellular telephone and a "spoofing"
service that disguised the telephone number of the prepaid
cellular telephone, impersonated an employee at the particular
MoneyGram outlet for which he had just obtained the
identification number, and placed an order for the transfer of
MoneyGram funds to various MoneyGram outlets along the Eastern
Seaboard.  Rossano and CC would then assist Castellano by driving
him to the MoneyGram outlet and picking up the ordered funds by
presenting fraudulent identification documents.  Castellano,
Rossano and CC then split the proceeds equally.  After CC was
arrested in June 2008, Castellano and Rossano continued to engage
in the scheme.  Rossano was arrested on December 1, 2008 in
Connecticut when he picked up a fraudulent MoneyGram order that
the co-conspirators had placed as part of this scheme.

On January 12, 2011, a grand jury in the Eastern
District of New York returned an indictment charging the
defendant and thirty-eight others with a variety of offenses
based on their leadership of, membership in and association with
the Colombo family.  (Docket Entry No. 1.)  The defendant was
charged in the indictment with racketeering conspiracy, in
violation of 18 U.S.C. § 1962(d) (Count One), and conspiring to
defraud, and defrauding, MoneyGram, in violation of 18 U.S.C.
§§ 1343 and 1349 (Counts Ten through Fourteen).

On January 20, 2011, the indictment was unsealed and
the defendant was arrested.  (Docket Entries Nos. 2, 30.)  On
July 21, 2011, the defendant pled guilty, pursuant to a plea
agreement, to Count One.  (Docket Entry No. 473; Presentence
Investigation Report ("PSR") ¶ 1.)

II.  <u>Discussion</u>

The government respectfully submits that a sentence within the advisory Guidelines range determined by the Court is appropriate.

A.    <u>Legal Standard</u>

The Sentencing Guidelines are advisory, not mandatory. <u>United States v. Booker</u>, 543 U.S. 220, 258-60 (2005).  However, the Supreme Court held in <u>Booker</u> that sentencing courts must consider the Guidelines in formulating an appropriate sentence. <u>Id.</u>  In <u>Gall v. United States</u>, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of <u>Booker</u>:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

<u>Gall</u>, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable.  [A district court] must make an individualized assessment based on the facts presented." <u>Id.</u> at 49-50 (citation and footnote omitted).

B.    <u>The Guidelines Range Is 57 to 71 Months</u>

The government submits that the appropriate Guidelines calculation is set forth below.

Racketeering Act Fifteen
<u>(Wire Fraud - MoneyGram)</u>

Base Offense Level (§ 2B1.1(a)(1))                     7

Plus: Loss exceeded $1,000,000
      (§ 2B1.1(b)(1)(I))                            +16

Plus: More than $1,000,000 from a
      Financial Institution (§ 2B1.1(b)(14)(A))    + 2

-3-

```
Plus: Aggravating role (§ 3B1.1(c))              + 2

Less: Acceptance of responsibility (§ 3E1.1(a))  - 2

Less: Global resolution (§ 5K2.0)                - 2

Total:                                           23
```

Because the defendant is in Criminal History Category III, the advisory Guidelines range of imprisonment is 57 to 71 months.

      1.   An Aggravating Role Enhancement is Warranted

Although the aggravating role enhancement was not included in either the Plea Agreement or the PSR,[1] the enhancement is warranted.  Application Note 1 to U.S.S.G. § 2E1.1, the applicable guideline for racketeering violations, provides:

> Where there is more than one underlying offense [i.e., predicate racketeering act], treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2).  To determine whether subsection (a)(1) or (a)(2) results in the greater offense level, apply Chapter Three, Parts A, B, C, and D to both (a)(1) and (a)(2).

---

[1]    Paragraph 3 of the Plea Agreement provides:

The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw his plea and the government will not be deemed to have breached this agreement.

Chapter Three, Part B provides for a two-level enhancement where a "defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . ."[2]  U.S.S.G. § 3B1.1(c).

––––––––––––––

[2]    The government acknowledges the Second Circuit's observation in <u>United States v. Ivezaj</u> that "a defendant's role adjustment is to be made on the basis of the defendant's role in the overall RICO enterprise." 568 F.3d 88, 99 (2d Cir. 2009). The government respectfully submits that the Second Circuit's observation does not preclude the Court from applying a role adjustment as to a particular predicate where a defendant holds a leadership role in a predicate act but not in the enterprise; notably, the plain language of Application Note 1 directs the reader to apply Chapter 3, Part B – role enhancements – in calculating the base offense level for a racketeering conspiracy. Such an application is consistent with the circuit court's rationale for its holding in <u>Ivezaj</u>:

> First, as the government contends, analyzing a defendant's role in the overall RICO enterprise makes a good deal more sense than considering his role in each underlying predicate.  In the case of a § 3B1.1(b) role enhancement, it makes little sense to allow a defendant who acts in a leadership capacity in a wide-ranging criminal enterprise to have his offense level adjusted on the basis of his participation in discrete racketeering acts.  For example, a defendant who served as a leader or manager of an extensive RICO enterprise should not be able to avoid a role enhancement simply because certain predicate acts involved fewer than five participants or criminal activity that was not extensive.  Second, we agree that the language of the Guidelines is clear that the requirement to look at each individual act in a RICO offense is only for the purpose of establishing the base level offense, not for applying the Chapter Three adjustments.

<u>Id.</u>  Just as it would make little sense to allow a defendant who holds a leadership position in the enterprise to avoid a role enhancement, it would make little sense to allow a defendant who holds a leadership position in a particular predicate act to avoid a role enhancement simply because he does not similarly hold a leadership position in the enterprise.  Were the Court not

Castellano was the mastermind of the scheme to defraud MoneyGram.  As the mastermind, Castellano concocted the plan, recruited his coconspirators and, following the separate arrests of CC and Rossano, attempted to recruit another individual to assist him in the endeavor.  His role in the scheme is reflected in a consensual recording made by one individual that Castellano attempted to recruit, a partial transcript of which is set forth in paragraph 19 of the PSR.

> 2.   A Two-Level Reduction For A
>      Global Resolution Is Warranted

The government is prepared to move for a two-level decrease in the applicable sentencing range.  As the Court is aware, a number of defendants in this case, including the present defendant, have pleaded guilty pursuant to plea agreements in which the government agreed to recommend an additional two-level reduction, pursuant to U.S.S.G. § 5K2.0, to the advisory Guidelines range if all "covered defendants" listed in the plea agreements entered guilty pleas by a certain date and the pleas were accepted by a United States District Judge.  Although not all of the "covered defendants" have pleaded guilty, the government moves for a two-level reduction in light of the guilty pleas entered by numerous covered defendants.

C.   A Sentence Within the Guidelines Range Is Appropriate

Based on the factors set forth in 18 U.S.C. § 3553(a), a sentence within the Guidelines range determined by the Court is appropriate in this case.

> 1.   The Nature and Circumstances of the Offense

The offense in which the defendant participated is a serious one.  18 U.S.C. § 3553(a)(1).  Both of the fraud conspiracies alleged in the indictment were sophisticated; they spanned numerous states, lasted years and resulted in significant losses.  The MoneyGram fraud was particularly sophisticated. Castellano used social engineering to obtain a MoneyGram outlet's pin identification number; specifically, he explained, "I gotta

_____

to apply a role enhancement as to Castellano, the Guidelines would produce an anomalous result.  That is, the defendant would receive a benefit for committing the fraud under the auspices of a larger criminal organization – the Colombo crime family – rather than committing the fraud without its protection.

send $50. . . . And they read their pin numbers to me as they do the trans. . . . So I go to the store now and I go, send a real transaction but I write the E's backwards, flip them over, like this and that, so they scratch their heads so they stay with me, in front of me." (PSR ¶ 19). Castellano then arranged for the money to be transferred on numerous occasions to gambling establishments all over the world and offset any risk by strategically placing bets "against each other." (PSR ¶ 19).

That the lucrative scheme to defraud was committed in connection with the Colombo family, a dangerous criminal enterprise that uses violence, including murder, to further its interests, further underscores the serious nature of the offense. As set forth above, the co-conspirators shared their earnings with CC, a high-ranking member of the Colombo family. Sharing proceeds of lucrative schemes greatly contributes to the families' viability as dangerous criminal organizations. For example, funds from Castellano and his co-conspirators' fraudulent schemes helped to fund CC's violent loansharking operation. Similarly, sharing criminal resources – such as access to fraudulent identification documents – with organized crime families greatly contributes to the families' viability. (Castellano admitted to a cooperating witness that after he suffered an automobile accident, he feared that the police officers who responded would discover the numerous fraudulent identification documents in his vehicle.)

In light of the foregoing, the government respectfully submits that the nature and circumstances of the offense warrant a sentence within the advisory Guidelines range.

2.   The Defendant's History and Characteristics

The defendant's history and characteristics support the imposition of a sentence within the Guidelines range. 18 U.S.C. § 3553(a)(1). The defendant is a long-time associate of the Colombo family and a perpetual fraudster. In addition to the fraudulent schemes alleged in the indictment, the defendant also contemplated several other fraudulent schemes. For example, in October, 2009, Castellano tried to recruit co-conspirators to accompany him on a ten-day trip to Florida to perpetrate a scheme similar to that alleged in racketeering act three. Castellano told the individual he tried to recruit that the scheme would involve Castellano falsely advertising in newspapers and magazines that he could fix an individual's credit if he or she first sent him an up-front fee.

Castellano submits that a non-incarceratory sentence is warranted in light of Castellano's family circumstances and specifically as a result of Castellano's young, autistic son. While the government is sympathetic to Castellano's tragic family circumstances, they do not warrant leniency in this particular case given the repeated opportunities afforded to Castellano by the court system and the choices that Castellano nonetheless made. Castellano was fully aware of his son's dire circumstances when he associated with the Colombo family, when he committed the elaborate fraud against MoneyGram, and when he contemplated other similar fraudulent schemes. Furthermore, Castellano's claims that prior to his January 2011 arrest he stayed home to care for his son is belied by the evidence. Rather than provide his son the round-the-clock care that he now claims his son needs, Castellano spent the bulk of his time in the years leading up to his arrest traveling to various MoneyGram outlets along the east coast in order to perpetuate the fraud scheme and contemplate new schemes.

Castellano also suggests that non-incarceratory is warranted because of his drug and gambling addictions. While the government does not dispute that Castellano suffers from a serious gambling addiction, the government does not believe that his addiction warrants a non-Guidelines sentence. Notably, after Castellano's prior conviction, which he also attributed to his gambling addiction, Castellano was ordered to undergo treatment for his addiction and failed to attend numerous treatment sessions. (PSR ¶¶ 49-50; 64-65). Castellano submits that he has had an "epiphany" and now – for the first time – stands ready to make a change in his life (Def't Sent. Mem. at 2); yet, he offers no support for his self-serving claim and there is no reason to believe that Castellano intends to make a change now after he has repeatedly failed to do so following his prior arrests and convictions.

3.   <u>Other Sentencing Factors</u>

A sentence within the advisory Guidelines range is appropriate to reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant's offense is a serious crime that is critical to the success of organized crime families.

However, a sentence within the advisory Guidelines range is particularly appropriate to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under

-8-

section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). Notably, Castellano's arrest, conviction and sentence to a 33-month term of incarceration for his role in the Western Union fraud scheme did not deter Castellano from associating with the Colombo family and participating in the scheme to defraud MoneyGram. Therefore, a sentence within the Guidelines range is warranted to satisfy the purposes of specific deterrence and protecting the public from the defendant's crimes. (As such, the government vehemently disagrees with the defendant's summary claim that his prior sentence serves as a mitigating factor (Def't Sent. Mem. at 2); to the contrary, it is a significant aggravating factor.) The need for specific deterrence is further bolstered by the fact that the defendant's arrest in January 2001 did not cause the defendant to abandon his criminal ways; his bail was revoked in June 2001 when he continued to engage in fraud. (PSR ¶ 44, 47). Nor was the defendant's conviction and sentence in 2002 sufficient to dissuade the defendant from a life of crime; he violated the terms of his supervised release, which lasted from October 2003 until September 2007 by failing to attend mental health treatment and gambler's anonymous sessions (PSR ¶¶ 49-50), associating with the Colombo family and commencing the scheme against MoneyGram in January 2007, all of which took place while the defendant was serving his term of supervised release. In addition, a sentence within the advisory Guidelines range is necessary in order to deter others who, like the defendant, are in a position to choose between obeying the law and committing crimes.

III. <u>Conclusion</u>

        For all of the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range determined by the Court.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

By:             /s/
                              Elizabeth A. Geddes
                              Allon Lifshitz
                              Assistant U.S. Attorneys
                              (718) 254-6430/6164

cc:  Clerk of the Court (KAM) (by ECF)
     Steven R. Kartagener, Esq. (by ECF)
     Michelle Espinoza, Senior U.S. Probation Officer (by email)